Christina N. Goodrich (SBN 261722)
Christina.Goodrich@klgates.com
Kelsi E. Robinson (SBN 347066)
Kelsi.Robinson@klgates.com
**K&L GATES LLP**
10100 Santa Monica Blvd., Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 210 552 5001

[*Additional Counsel on signature page*]

*Attorneys for Plaintiff InMode Ltd.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INMODE LTD., <br><br> Plaintiff, <br><br> v. <br><br> BTL INDUSTRIES, INC. D/B/A BTL AESTHETICS, <br><br> Defendant. | Case No. 2:23-CV-08583-JWH-RAO <br><br> **PLAINTIFF INMODE LTD.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE, TRANSFER FOR LACK OF VENUE; DECLARATION OF CHRISTINA GOODRICH IN SUPPORT THEREOF; DECLARATION OF CAROLINE VERMILLION IN SUPPORT THEREOF** <br><br> Date: April 19, 2024 <br> Time: 9:00 a.m. <br> Courtroom: 9D |

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................5

II.  STATEMENT OF FACTS......................................................................6

III. JUDICIAL STANDARD ......................................................................9

    A.     Motion to Dismiss for Improper Venue ...............................................9

    B.     Motion to Transfer Venue under § 1404(a) ........................................10

IV. ARGUMENT.......................................................................................11

    A.     Venue Is Proper in This District Under 28 U.S.C. § 1400(b)..............11

    B.     BTL has not Established that the Interests of Justice and Convenience Favor Transfer to the District of Massachusetts ................................13

          1.     *Jones* factors 4 and 5: The parties' contacts with the forum and contacts related to Plaintiff's claims disfavor transfer. ............14

          2.     *Jones* factors 6 and 8: Costs of litigation and access to sources of proof do not favor transfer....................................................18

          3.     *Jones* factor 7: Availability of compulsory process to compel a witness do not favor transfer....................................................22

          4.     Public interest and administrative considerations support keeping this action in this District. ...........................................23

V.  CONCLUSION .................................................................................24

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstar Mtg. Grp. v. Your Store Online LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................... 19, 21, 23

*Amini Innovation Corp. v. JS Imps., Inc.*,
497 F.Supp.2d 1093 (C.D. Cal. May 22, 2007) ........................................ 11, 13

*Bohara v. Backus Hosp. Med. Benefit Plan*,
390 F.Supp.2d 957 (C.D. Cal. Sept. 23, 2005) .................................................. 19

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) ................................................................ 20

*In re Cray, Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ..........................................10, 11, 12, 13

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct.
2143, 85 L. Ed. 2d 500 (1985) ........................................................................ 23, 24

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) ........................................................................ 13

*Incipio, LLC v. Argento SC by Sicura Inc.*,
2018 WL 4945002 (C.D. Cal. July 18, 2018) .................................................. 10

*Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*,
2020 WL 3977781 (C.D. Cal. May 28, 2020) .................................................. 10

*iPowerUp, Inc. v. Ascent Solar Techs., Inc.*,
2016 WL 6953453 (C.D. Cal. May 27, 2008) ..............................................*passim*

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......................................................................... 11

*Metz v. U.S. Life Ins. Co.*,
674 F. Supp. 2d 1141 (C.D. Cal. Dec. 11, 2009) ........................................ 19, 21

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) .......................................................................... 10

- 3 -

*Natkin v. Am. Osteopathic Ass'n.*,
 2016 WL 7486597 (C.D. Cal. July 22, 2016) ....................................21

*NFF Inventions LLC v. CTI Food Acquisition LLC*,
 2012 WL 12887830 (C.D. Cal. July 3, 2012) ....................................15

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
 2019 WL 6482222 (C.D. Cal. July 8, 2019) ....................................14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
 581 U.S. 258 (2017)....................................................................10

*Uniloc 2017 LLC v. H&R Block, Inc.*,
 2019 WL 8219781 (C.D. Cal. Dec. 23, 2019)....................................10

**Statutes**

28 U.S.C. § 1400(b) ..........................................................5, 10, 11, 13

28 U.S.C. § 1404(a) ..............................................................5, 10, 13

28 U.S.C. § 1406(a) ....................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(3) ..............................................................5, 9, 10

Fed. R. Civ. P. 45(c)(1)....................................................................22

Fed. R. Civ. P. 45(c)(1)(A) ................................................................22

- 4 -

1   **I.    INTRODUCTION**

2   In its Motion to Dismiss or, in the Alternative, Transfer, for Lack of Venue (DE

3   24-1) ("Motion" or "Mot."), Defendant BTL Industries, Inc. ("BTL") fails to establish

4   that venue in this District is improper or inconvenient. Indeed, BTL ignores factors, key

5   information, and evidence relevant to this analysis. The Court should therefore deny

6   BTL's Motion in its entirety.

7   This case arises from BTL's alleged infringement of InMode Ltd.'s ("InMode" or

8   "Plaintiff") U.S. Patent No. 8,961,511 ("'511 Patent") within this District and

9   throughout the United States by using BTL's Ultra Femme 360 and EmFemme 360

10   products. *See* DE 1 ("Complaint") ¶¶ 1, 30–32. The method claims of the '511 Patent

11   are infringed through use of the accused Ultra Femme 360 and EmFemme 360 products

12   (the "Accused Products"). InMode alleges that BTL directly infringes the '511 Patent

13   through, *inter alia*, providing demonstrations and training for healthcare professionals

14   using the Accused Products and indirectly by inducing third-party healthcare providers

15   in this District to infringe the '511 Patent. *See, e.g.*, *id.* ¶¶ 10, 36, 44–46. BTL has moved

16   to dismiss this action pursuant to Federal Rule 12(b)(3) for improper venue or,

17   alternatively, to transfer this litigation to the District of Massachusetts pursuant to §

18   1404(a). *See* Mot. at 1.

19   BTL contends venue is improper in this District based on the conclusory assertion

20   that BTL lacks "a 'regular and established' place of business in California." *Id.* at 6. The

21   venue discovery conducted by InMode, however, establishes that assertion is false. The

22   Beverly Hills, California showroom occupied and controlled by BTL is BTL's regular

23   and established place of business. Thus, because BTL has committed acts of

24   infringement and has a regular and established place of business within this District,

25   venue is proper under 28 U.S.C. § 1400(b).

26   BTL further argues that, even if venue is proper, the Court should transfer the case

27   to the District of Massachusetts for convenience "because all the evidence and witnesses

28   relevant to the lawsuit is [*sic*] located in Massachusetts." *Id.* at 1. This is, again, false.

BTL fails to address key factors relevant to the analysis—namely, the availability of compulsory process to compel attendance of unwilling nonparty witnesses—and has failed to present sufficient evidence relevant to the convenience factors it does identify. Indeed, the only evidence presented by BTL is a self-serving declaration based on inadmissible conclusions and excludes key information relating to products accused of infringement. InMode then obtained venue-related discovery. This venue evidence and all relevant *Jones* factors overwhelmingly disfavor transfer. Accordingly, because BTL has failed to satisfy its burden, the Court should also deny BTL's Motion to transfer.

## II.   <u>STATEMENT OF FACTS</u>

Plaintiff InMode is organized under the laws of Israel with its principal place of business in Yokneam, Israel (Complaint ¶ 2), and its sole U.S. office is in Irvine, California. Goodrich Decl., Ex. A. InMode's U.S.-based "sales efforts" are headquartered in Irvine, California. *Id.* Ex. B at 45. Plaintiff owns the '511 Patent, entitled "Vaginal Remodeling Device And Methods." Complaint ¶ 23. Among InMode's products is at least one vaginal rejuvenation product, the *FormaV*. Goodrich Decl., Ex. B at 45.

BTL is a Delaware corporation, headquartered in Marlborough, Massachusetts. DE 24-2 ¶ 3. BTL argues that this facility is BTL's "main locus of operations," including BTL's "product development [and] marketing" operations. Mot. at 2. However, according to Jason Wooden—BTL's **sole** declarant, ███████████████████████ ███████████████████████████████████████████ (Goodrich Decl. Ex. C at 17:12–:12), ████████████ *id.* at 15:10–:12). ███████████████████████ ██████████████████████ (*id.* at 52:12–:15), ████████ ████████████████████████████ (*id.* at 71:3–:19).

BTL also operates a Beverly Hills, California showroom. *See* DE 24-2 ¶ 8. On May 5, 2021, BTL announced its imminent opening as a "'space that covers every touchpoint from education to final sale.'" Goodrich Decl., Ex. D. ██████████

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

1    ████████████████████████████████ (*See, e.g.*, *id.* Ex.

2    E), █████████████████████████ *Id.* Ex. C at 98:19–99:5.

3    ██████████████████████████████████████████

4    ███████████████████████████████████ *Id.* at

5    120:8–:21. ████████████████████████████████

6    ████████████████████████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ██████████████████████ (*id.* at 63:3–:8), ████████

11   ████████████████████ (*see id.* at 29:9–:12), o████████

12   ████ (*see id.* at 28:19–:23, 29:17–:21).

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████ *See*

16   Vermillion Decl., Ex. F. ██████████████████████

17   ████████████████████████████████████████████

18   ███████████████████████████████. [1] ████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ███████████ *See id.* Ex. G.

23        The products accused of infringement by virtue of their use in Performing the

24   patented method are those marketed as Ultra Femme 360 and EmFemme 360. *See, e.g.*,

25   Complaint ¶¶ 30–32. ████████████████████████

26   ███████████████████████████████████ *See* Goodrich

27   _____

28   [1] These numbers are based on a deduplication of information in Exhibit F.

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

Decl., Ex. C at 28:3–:6. ██████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ *See* Goodrich Decl. Ex. H; Ex. C at 124:13–

:16, 173:19–:21. █████████████████████████████████████████

████████████████████████████████████████████ *Id.* Ex. C at 26:6–

28:12. █████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.* at 27:16–

:22. BTL, however, refused to provide discovery of the Exion platform and the EmFemme 360 applicators related thereto.[2] Thus, taking into consideration only the products that BTL unilaterally (and improperly) decided are at issue, the number of third parties who may have evidence relevant to InMode's ***induced*** infringement claims in this District is greater than Massachusetts ████████████████████████████

███████████████████████████████████████

Despite that the EmFemme 360 applicator may be used with the Exion platform, BTL excludes any reference to the Exion platform in its moving papers. *See generally*

---

[2] During Mr. Wooden's deposition, InMode learned BTL excluded the Exion device from its discovery responses, document production, its Motion altogether. Goodrich Decl., Ex. C at 73:11–77:6 (discussion between counsel regarding scope of accused produces) ("[BTL Counsel]: The Exion is not a device at issue in this case. [InMode Counsel]: The EmFemme 360 is part of Exion, a product at issue in this case."). Despite Mr. Wooden's confirmation that the Exion platform uses the EmFemme 360 applicator, Mr. Wooden repeatedly relied on counsel's advice, and refused to answer questions about the Exion device and the EmFemme 360 applicator's use therewith. *Id.* at 78:7– :14. BTL produced documents and information relating to the Exilis Ultra 360 base unit, which used the Ultra Femme 360 applicator; however, BTL refused to produce any information for a product with a similar naming convention, i.e. the Exion base unit with the EmFemme 360 applicator. *See e.g. id.* at 125:6–26:7, 172:24–175:20. In other words, despite producing documents relating to the Ultra Femme applicator/handpiece which uses a base unit of a different name (Exilis Ultra 360), BTL refused to produce documents *and testimony* relating to the EmFemme 360 applicator which uses a base unit of a different name (Exion).

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

DE 24. Indeed, BTL emphasizes that the "Emfemme device" has not been turned on or used for demonstration treatments and that there are no marketing materials at the Beverly Hills showroom related to the Emfemme device. *See* Mot. at 2, 6; DE 24-2 ¶¶ 5–6, 10–12. BTL says nothing, however, about whether the Exion device, which *also uses the EmFemme 360 applicator*, has similarly not been turned on or used for demonstration purposes. ████████████████████████████████████████████ ████████████████████████████████████████████ Goodrich Decl., Ex. C at 111:16– 112:2. Likewise, BTL says nothing about the existence of marketing materials relating to the Exion platform at the Beverly Hills showroom.

The evidence produced by BTL indicates that the Exion device has, in fact, been demonstrated in the Beverly Hills showroom. ████████████████████████████ ████████████████████████████████████████████ Goodrich Decl., Ex. E; *see also* *Id.*, Ex. I at Response No. 1. █████████████████████████████████ █████████ (*Id.*, Ex. J), ████████████████████████ *Id.* at BTL_InMode- 0000109, 149, 151, 154, 156, 158, 160, 162, 165, 168, 171, 174, 184, 189, 210, 222, 227. ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ When BTL produces information about the EmFemme 360 applicators and their related Exion platforms that significance is expected to increase greatly, only further supporting that venue is proper in this District.

## III.    JUDICIAL STANDARD

### A.    Motion to Dismiss for Improper Venue

In ruling on a motion to dismiss for improper venue brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, courts may consider facts outside the pleadings but are "obligated to draw all reasonable inferences in favor of the non-moving

party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). When a Rule 12(b)(3) motion is made in a patent infringement case, the venue inquiry is governed exclusively by 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 269 (2017).

In a patent infringement case, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular established place of business." 28 U.S.C. § 1400(b). The Central District of California follows the Federal Circuit's three-part test to determine whether a defendant has a "regular and established place of business" within a district. *See Incipio, LLC v. Argento SC by Sicura Inc.*, 2018 WL 4945002, at *1 (C.D. Cal. July 18, 2018) (applying the framework set forth in *In re Cray, Inc.*, 871 F.3d 1355 (Fed. Cir. 2017)). First, there must be a "physical, geographical location in the district from which the business of the defendant is carried out." *Cray*, 871 F.3d at 1362. Second, that place "must be a regular and established place of business." *Id.* at 1362–63. Third, the place of business must be "a place of the defendant, not solely a place of the defendant's employee," meaning that the defendant "must establish or ratify the place of business" on its own accord. *Id.* at 1363–64. If the court finds that venue is improper, it may either dismiss the case or, if it is in the interest of justice, transfer the case to a district in which the case could have been brought. 28 U.S.C. § 1406(a). However, the interests of justice tend to favor transfer over dismissal "because 'dismissal of an action that could be brought elsewhere is time-consuming and justice defeating.'" *See Uniloc 2017 LLC v. H&R Block, Inc.*, 2019 WL 8219781, at *3 (C.D. Cal. Dec. 23, 2019) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)).

B.   **Motion to Transfer Venue under § 1404(a)**

District courts have discretion under 28 U.S.C. § 1404(a) "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Int'l Bus. Mach. Corp. v. Zillow Grp., Inc.*, 2020 WL 3977781, at *1 (C.D.

- 10 -

Cal. May 28, 2020) (citations omitted). The Ninth Circuit evaluates the *Jones* factors used to determine a motion to transfer, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (noting "the relevant public policy of the forum state, if any, is at least as significant a factor in the [Section] 1404(a) balancing" as well). "The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F.Supp.2d 1093, 1109 (C.D. Cal. May 22, 2007). However, "[i]t is not enough without more that the defendant would prefer another forum . . . [n]or will transfer be ordered if the result is merely to shift the inconvenience from one party to another." *Id.* at 1109–10 (citations omitted).

## IV.   **ARGUMENT**

### A.   **Venue Is Proper in This District Under 28 U.S.C. § 1400(b).**

Venue is demonstrably proper within the Central District of California under the second prong of 28 U.S.C. § 1400(b). BTL does not dispute that the alleged acts of infringement were committed within this District (*see* Mot. at Section II.A), and despite BTL's conclusory statements, the evidence uncovered during discovery plainly shows that BTL's Beverly Hills showroom is a "regular and established place of business" in this District, which, therefore, satisfies the second prong of §1400(b). *Cray*, 871 F.3d at 1364.

***First***, BTL's Beverly Hills showroom is a "physical, geographical location in the district from which the business of the defendant is carried out," which BTL does not genuinely dispute. *Id.* at 1362. BTL's showroom is a physical facility within this District,

- 11 -

located at 216 N. Canon Drive, Beverly Hills, California 90210. *See* DE 24-2 ¶ 7. At that location, BTL's employees carry out BTL's business by conducting treatment demonstrations and clinical trainings for prospective customers and healthcare providers. *See id.* ¶ 8.

**Second**, BTL uses the Beverly Hills showroom as a "regular and established place of business" within this District. *Cray*, 871 F.3d at 1362. ████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ *See, e.g.*, Goodrich Decl. Ex. E. ██████████████████████████

█████████████████████. *See id.* at BTL_InMode-0000101–0000124 ████████████████████████████████████

████████████████████████████████████████████ BTL's business operations at the showroom are nonetheless steady, and far from "sporadic" as BTL contends. *See* Mot. at 6; *c.f. Cray*, 871 F.3d at 1362 ("Indeed, 'the doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business; yet a series of such acts would be so considered.'" (citing *Regular*, Black's Law Dictionary (1st ed. 1891))). Further, BTL operates the showroom in an "orderly and methodical manner." *See Cray*, 871 F.3d at 1362. █████████████████████ (Goodrich Decl., Ex. C at 156:10–:15), ████████████████████████ (*id.* at 99:23–100:9). ████████████████████████████████████

████████████████████████████████████████████ *See, e.g.*, *id.* Ex. E.

While BTL represents that no **single** employee reports to the showroom for work on a regular basis (Mot. at 5), ██████████████████████████████

████████████████████████████████████ *See* Ex. C at 98:19–99:5; *id.* at 99:21–:22 ████████████ ████████ This "regular, physical presence of [Defendant's] employee[s] . . .

- 12 -

conducting defendant's business" further satisfies the requirements of a "regular and established place of business." *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).

*Third*, the Beverly Hills showroom is "a place of the defendant, not solely a place of the defendant's employee[s]." *Cray*, 871 F.3d at 1363. Courts evaluate various nonexclusive factors to determine whether a facility is "of the defendant," such as: (i) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (ii) "the storing of materials at a place in the district so that they can be distributed or sold from that place"; and (iii) "defendant's representations that it has a place of business in the district." *Id.* at 1363–64. ███████ ████████████████████████████████████████████ Goodrich Decl., Ex. C at 91:12–:16. BTL also stores marketing materials at the facility—whether related to the Accused Products or not—for distribution. *See* DE 24-2 ¶ 12. BTL has explicitly advertised the Beverly Hills showroom as its own place of business. *See* Complaint ¶ 10.[3] Consequently, the Beverly Hills showroom is a place "of the defendant." *Cray*, 871 F.3d at 1363.

Venue is proper in this District under the second prong of 28 U.S.C. § 1400(b) because the alleged infringement occurred within this District and BTL's Beverly Hills showroom is demonstrably "a physical place, of business, of the defendant." *Id.* at 1364. The Court should, therefore, deny BTL's Motion to dismiss for improper venue.

## B.   BTL has not Established that the Interests of Justice and Convenience Favor Transfer to the District of Massachusetts

This Court should also deny BTL's Motion to transfer under § 1404(a) because the applicable *Jones* factors, considered together, disfavor transfer to the District of Massachusetts, and BTL has failed to satisfy its burden of proving otherwise. *See Amini*

---

[3] After InMode filed its complaint, BTL removed references to the Beverly Hills showroom from its website. *Compare* Goodrich Decl., Ex. K (December 10, 2023 website *with* Ex. L (current website). This further exemplifies BTL's efforts to hide relevant venue-related facts.

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

*Innovation Corp.*, 497 F. Supp. 2d at 1109 ("The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice."). As described below, *Jones* factors 4, 5, 6, 7, and 8 each weigh against transfer. The remaining factors either have a neutral effect on the analysis or are inapplicable to the facts of this case.

1. <u>*Jones* factors 4 and 5: The parties' contacts with the forum and contacts related to Plaintiff's claims disfavor transfer.</u>

The fourth *Jones* factor assesses the parties' contacts with the forum. BTL's failure to describe the standard for this factor is telling. This factor "weighs in favor of deferring to Plaintiff's chosen forum" where a "significant portion" of a defendant's business is located in this District. *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2019 WL 6482222, at *4 (C.D. Cal. July 8, 2019). For this factor specifically, a defendant's operation of business in this District, ***regardless*** of whether tied to the issues of the case, "is directly relevant to Defendant's contacts with the jurisdiction" for purposes of evaluating transfer. *Id.* ("By operating business location in this District, Defendant exposed itself to the risk of being sued here."). BTL's representation that "both parties lack contacts with the District of California [*sic*]" (Mot. at 8) is not only demonstrably false, but it is also expressly contradicted later in BTL's brief, albeit through BTL downplaying the scope of its contacts within this District. *Id.* at 9.

Similarly, the fifth *Jones* factor assesses the contacts related to the Plaintiff's claims. In evaluating this factor, "the law asks [the Court], here, to identify the principal location of the legally operative facts—and in patent cases that location generally is where the allegedly infringing product was designed, developed and produced." *iPowerUp, Inc. v. Ascent Solar Techs., Inc.*, 2016 WL 6953453, at *5 (C.D. Cal. May 27, 2008) (quoting *Arete Power, Inc. v. Beacon Power Corp.*, 2008 WL 508477, at *5 (N.D. Cal. Apr. 3, 2013)). Legally operative facts are not limited to BTL's contacts and Plaintiffs' contacts within this District. Indeed, as discussed below in InMode's

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

discussion of factor 7, third-party contacts within this District are especially relevant in view of InMode's induced infringement claims.

a.   *BTL has significant contacts within this District*

As discussed *supra* (Section III.A.), BTL has a regular and established place of business in this District. ███████████████████████████████████████ ████████████ *See* Goodrich Decl., Ex. M (Employee List). ██████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████ *See id.*; *id.*, Ex. C at 33:22–34:1, 34:20-:23; *see also NFF Inventions LLC v. CTI Food Acquisition LLC*, 2012 WL 12887830, at *1 (C.D. Cal. July 3, 2012) (disfavoring transfer where a plaintiff "also identifies a number of party witnesses employed by [the defendant] who live and work in California"). ███████████ ██████████████████████████████████████████████████ (*see id.* Ex. C at 122:3–:8) ██████████████████████████████████ *See id.* at 101:12–:15; 102:6–:12; 103:9–:13. Plaintiff has also "displayed willingness to work with [BTL] to schedule interviews and depositions . . . according to the convenience of their employees," as evidenced by Plaintiff's remote deposition of Mr. Wooden during Eastern Standard Time business hours. *NFF Inventions LLC*, 2012 WL 12887830, at *2 (disfavoring transfer).

████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *See, e.g.*, Goodrich Decl., Ex. E at BTL_InMode-0000109 ███████████ -0000119 ████████████ -0000128 ██████ ████, -0000141 █████████████████████████ Vermillion Decl. Ex. F at column F ████████████████████████████████████████████████ ████████████████████████████████████████████ *See id.* Ex. F.

- 15 -

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE



*See, e.g.*, Goodrich Decl. Ex. N at 2–3 *see also id.* Exs. O and P (same). *See id.* Ex. N at 2; *id.* Ex. C at 144:8–:11. *Id.* Ex. C at 171:18–172:1. *Id.* at 52:12–:15, 71:3–:19.

Finally, in the year preceding InMode's October 11, 2023 complaint, BTL filed six separate patent infringement cases against defendants in the U.S. District Court for the Central District of California (and one more a week after InMode filed its complaint) (Vermillion Decl. Ex. Q) further confirming BTL's substantial contacts with this District and that litigating in this District is not as inconvenient as BTL contends.

As evidenced through the foregoing discussion, BTL's representation that its "only contacts with California are sales of BTL's products, and a sporadically used showroom" (Mot. at 9) is inaccurate. BTL failed to meet its burden with respect to this factor, and the evidence confirms that BTL has significant contacts with this District.

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

b.   *InMode has significant contacts within this District.*

Though Plaintiff is headquartered in Israel, its sole United States subsidiary is located in this District at 17 Hughes, Irvine, California 92618, which Plaintiff holds out to the public as being its only U.S. facility. *See Goodrich Decl.,* Ex. A. Indeed, InMode represents in submissions to the U.S. S.E.C. that its U.S.-based "sales efforts" are headquartered in Irvine, California. *Id.* Ex. B at 45. Plaintiff's chief financial officer, Yair Malca, also resides in this District and is likely to have information relevant to this litigation, including at least the issue of damages. *See id.* Ex. R; Vermillion Decl. Ex. S. Further, Plaintiff maintains strong contacts within this District through the sale of its products to healthcare and aesthetic providers in this District, including numerous providers in the greater Los Angeles area. *See Id.* Ex. T. Plaintiff has also sold products in the field of vaginal rejuvenation, such as its FormaV product, to at least 15 providers in the greater Los Angeles area, who further provide services using those products to third-party patients. *See id.* Ex. U. In fact, certain prospective customers identified by BTL ***already provide services using InMode's vaginal rejuvenation products*** within this District, implicating further damages considerations tied to activities within this forum. *Compare id.* ███████████████████████████████████████ ████████████████████ *with id.* Ex. F ████████████████████ ████████████████████████████████████████

c.   *Most contacts relevant to this action are not in Massachusetts, and there are significant contacts in this District.*

In assessing the contacts relating to Plaintiff's claims, "the law asks [the court], here, to identify the principal location of the legally operative facts—and in patent cases that location generally is where the allegedly infringing product was designed, developed and produced." *iPowerUp, Inc.*, 2016 WL 6953453, at *5 (quoting *Arete Power, Inc.*, 2008 WL 508477, at *5). Despite stating in its Motion that product development takes place in Massachusetts and referring to Mr. Wooden's declaration for the same proposition (*see* Mot. at 2), Mr. Wooden's declaration says nothing about

- 17 -

1    product development. *See generally* DE 24-2. Moreover, ████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████ Goodrich Decl.,

4    Ex. C at 28:13–31:17. ████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████ *Id.* at 17:6–:19. ████████████

7    ████████████████████████████ *Id* at 15:10–:12. Thus, BTL has failed

8    to satisfy its burden of showing Massachusetts is the principal location of these legally

9    operative facts.

10       Though R&D and manufacturing is evidently conducted in Europe, there are,

11   nonetheless, substantially more contacts related to Plaintiff's claims within the Central

12   District of California than Massachusetts, disfavoring transfer. ████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████ *See* Vermillion Decl. Ex. G. ████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████ *See id.* Ex. F. The contacts related to Plaintiff's claims are,

19   therefore, inextricably tied to this forum and, again, disfavor transfer. And, if not, the

20   fact that significant contacts in Europe have key information relevant to this case as

21   compared to minimal contacts with Massachusetts, means that factor five is rendered

22   neutral.

23       In view of the foregoing, both the parties' contacts with the forum and contacts

24   related to Plaintiff's claims weigh against transfer.

25       2.    *Jones* factors 6 and 8: Costs of litigation and access to sources of

26            proof do not favor transfer.

27       The sixth *Jones* factor assesses the comparative costs of litigation in the two

28   forums, which requires "an evaluation based on the location of potential percipient

- 18 -

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

witnesses," as litigation costs are reduced when most of the witnesses expected to testify or give depositions are located near the venue. *iPowerUp, Inc.*, 2016 WL 6953453, at *5 (citing *Italian Colors Rest. V. Am. Express Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003)). "[A] court must consider 'not only the number of witnesses located in the respective districts, but also the ***nature and quality of their testimony*** in relation to the issues in the case.'" *Id.* at *6 (quoting *Stewart v. Jos. A. Bank Clothiers, Inc.*, 2010 WL 545846, at *3 (N.D. Cal. Feb. 11, 2010)) (emphasis in original) ("Affidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony." (quotations and citations omitted)).

Similarly, the eighth *Jones* factor evaluates the ease of access to sources of proof, such as witnesses and documents. As to witnesses, the "defendant must name the witnesses it wishes to call, the anticipated areas of testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F.Supp.2d 957, 963 (C.D. Cal. Sept. 23, 2005). "The court accords less weight to the inconvenience of ***party*** witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated." *Allstar Mtg. Grp. v. Your Store Online LLC*, 666 F. Supp. 2d 1109, at 1132 (C.D. Cal. 2009) (emphasis in original). As to the location of records and documents, "the movant must show particularly the location, difficulty of transportation, and the importance of such records." *Id.* However, "the ease of access to documents does not weigh heavily in the transfer analysis, given that advancements in technology have made it easy for documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. Dec. 11, 2009) (quoting *Szegedy v. Keystone Food Prods. Inc.*, 2009 WL 2767683, at *2 (C.D. Cal. Aug. 26, 2009) (internal quotations omitted)). As described below, BTL has failed to proffer the necessary evidence to satisfy its burden. Resultantly, these factors should weigh against transfer.

BTL summarily argues that because "[m]ost—if not all—of the evidence relevant to this case is in Massachusetts," transfer to Massachusetts would limit costs for its

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

witnesses and corporate representatives to "travel between Massachusetts and California for hearings, discovery, and trial." Mot. at 11. However, because *Jones* factor 6 evaluates the comparative costs of litigation in the two forums "based on the location of potential percipient witnesses," the moving party must identify "not only the number of witnesses located in the respective districts, but also the ***nature and quality of their testimony*** in relation to the issues in this case." *iPowerUp, Inc.*, 2016 WL 6953453, at *6 (emphasis in original) (quoting *Stewart*, 2010 WL 545846, at *3); *see Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998). BTL merely states that "personnel relating to the devices" and "individuals with knowledge about the device[s]" are in Massachusetts. (Mot. at 10).

Beyond failing to acknowledge the potential percipient witnesses in California— ████████████████████ (*see supra* Section III.B.1)—BTL identifies *no key witnesses* with the requisite specificity, and it certainly has not provided the general information to which such witness(es) would testify. Further, BTL's concerns regarding the travel costs associated with discovery are baseless, as "a deposition ordinarily is taken in the District in which a witness resides" and the parties' counsel "will be required to travel to conduct depositions whether venue is here or in [Massachusetts]." *iPowerUp, Inc.*, 2016 WL 6953453, at *6 ("Pre-trial discovery involving these [ ] witnesses, including discovery, can be held in [Massachusetts]. In that case, only counsel will be inconvenienced. Inconvenience to counsel is irrelevant in determining whether to transfer venues." (quoting *Rosholm v. Byb Brands, Inc.*, 2016 WL 1445592, at *3 (C.D. Cal. Feb. 22, 2016))). Accordingly, BTL has not shown that *Jones* factor 6 favors transfer.

Similarly, BTL's argument regarding access to sources of proof is meritless. Indeed, it is unclear whether there are copies of key documents at BTL's Massachusetts facility ***at all***. *See, e.g.*, Goodrich Decl., Ex. C at 28:19–:23 █████████ ███████████████████████████████████████████████ 29:9–:12 █████████

1  ████████████████████████████████████████████████

2  ██████████ 29:17–:21 ████████████████████

3  ████████████████████████████████ But even so, BTL

4  has failed to proffer any evidence regarding the "difficulty of transportation, and the

5  importance of such record[s]." *Allstar Mktg. Grp.*, 666 F. Supp. 2d at 1333 ("[T]he

6  defendant must show with particularity the location, difficulty of transportation, and the

7  importance of such record[s]." (quoting *Bohara*, 390 F. Supp. 2d at 963)) (finding

8  defendants' argument that "their computers, sales records and customer lists are located

9  in Wisconsin" insufficient where defendants failed to offer evidence regarding the size

10  and nature of their records).

11      Further, "electronic methods to transmit documents may mitigate the

12  inconvenience of access to documents relating to infringement." *iPowerUp, Inc.*, 2016

13  WL 6953453, at *7; *see also Metz*, 674 F. Supp. 2d at 1149 ("[T]he 'ease of access to

14  documents does not weigh heavily in the transfer analysis, given that advancements in

15  technology have made it easy for documents to be transferred to different locations.'"

16  (quoting *Szegedy*, 2009 WL 2767683, at *2)). ████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████ Goodrich

19  Decl., Ex. C at 120:8–:21. "[B]ecause the necessary documents and records are

20  maintained in electronic form, this factor is neutral" ***at best***. *Natkin v. Am. Osteopathic

21  Ass'n.*, 2016 WL 7486597, at *9 (C.D. Cal. July 22, 2016).

22      Furthermore, it is apparent that at least the EmFemme [360] base unit with the

23  EmFemme [360] applicator is kept in this District. *See* DE 24-2 ¶ 11. ████████

24  ████████████████████████████████████████████████

25  ██████████ m (Goodrich Decl., Ex. C at 104:14–:23), ████████

26  ████████████████████████████████████████████████

27  ████████ *See id.* Ex. J, ████████████████████

28  ████████ at BTL_InMode-0000109, 149, 151, 154, 156, 158, 160, 162, 165, 168,

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

171, 174, 184, 189, 210, 222, 227. Moreover, BTL does not say one way or another whether there are any Ultra Femme devices in the Beverly Hills showroom or in Massachusetts.

BTL has neither identified specific percipient witnesses in Massachusetts or the nature of their anticipated testimony, nor explained the alleged difficulty of transporting documents or the importance thereof. Further, the costs of litigation and access to sources of proof has not been an obstacle to the seven cases BTL has brought in the Central District of California in the past year. BTL, therefore, has not satisfied its burden as to *Jones* factors 6 and 8. These factors are neutral or support denying BTL's Motion.

3.   <u>*Jones* factor 7: Availability of compulsory process to compel a witness do not favor transfer.</u>

The seventh *Jones* factor evaluates the availability of compulsory process to compel a witness. In weighing this factor, courts evaluate the number of potential witnesses identified by the parties that are beyond the subpoena power of the court pursuant to Federal Rule of Civil Procedure 45(c)(1). *See iPowerUp, Inc.*, 2016 WL 6953453, at *7; Fed. R. Civ. P. 45(c)(1)(A) (authorizing district courts to compel witnesses to attend trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). Again, however, the defendant must still provide "sufficient information as to the likely content of testimony by these witnesses or whether it would be required at trial." *Id.* Despite Plaintiff expressly alleging indirect infringement as its second claim (Complaint ¶¶ 43–53), BTL completely ignores the relevance of third-party information in its Motion and Plaintiff's allegations relating to third parties located within this District.

This factor disfavors transfer to the District of Massachusetts in view of the substantial number of potential third-party witnesses in California who the Court may compel to attend trial as needed. Here, Plaintiff anticipates seeking testimony from third-party healthcare providers offering services using the Accused Products (i.e., direct infringers of the method claims), as well as other customers who have purchased the

Accused Products. ████████████████████████████████████████
████████████████████████████████████ *See* Goodrich Decl., Ex. G.
████████████████████████████████████████████████████████████
████████████ *See id.* Plaintiff is, therefore, substantially more likely to obtain the necessary evidence to support its claims of indirect infringement through the aggregate testimony of ████ third-party healthcare providers in this District, compared to ████ third-party healthcare providers in Massachusetts.

Plaintiff expects that these third parties have evidence about the trainings, demonstrations, and marketing of the Accused Products that BTL has performed in this District, and these third parties are likely be the very direct infringers relevant to Plaintiff's claim of indirect infringement. Thus, these third parties will have significant evidence relevant to both BTL's alleged indirect and direct infringement, and they would not otherwise be subject to the court's jurisdiction if the case were transferred to the District of Massachusetts. It follows that because BTL has not identified any non-party witnesses beyond this Court's jurisdiction, this factor weighs against transfer.

    4.   <u>Public interest and administrative considerations support keeping this action in this District.</u>

Courts also evaluate public interest factors and administrative considerations in determining a motion to transfer, such as docket congestion. However, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L. Ed. 2d 500 (1985). Moreover, "[a]dministrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a [§] 1404(a) transfer." *AllStar Mktg. Grp.*, 666 F.Supp.2d at 1134 (citing *Gates Learjet Corp.*, 743 F.2d at 1335).

BTL makes two public interest and administrative considerations arguments, neither of which is compelling. First, BTL seemingly argues that because "all relevant

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

witnesses and evidence are in Massachusetts," the issues in this case are somehow "localized controversies" that should be decided in Massachusetts. Mot. at 11 (citations omitted). As an initial matter and as previously discussed, "all relevant witnesses and evidence" are ***not*** in Massachusetts. *See supra*, Section III.B.2. Moreover, there is a clear interest in resolving the controversy in this District given the numerous ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Vermillion Decl., Ex. G, Ex. V. This interest is heightened because the Accused Products are specifically used for medical treatment purposes, implicating myriad public health concerns. BTL's public interest argument is, therefore, unpersuasive.

Further, BTL's argument regarding court congestion is inapposite in view of the comparative speed of each forum. "The real issue is not whether a dismissal will ***reduce*** the court's congestion but whether a trial may be ***speedier*** in another court because of its less crowded docket." *Gates Learjet Corp.*, 743 F.2d at 1337 (emphasis added). Despite the number of cases filed in each court, as of December 31, 2023, the median time interval for civil cases in the District of Massachusetts was 34.6 months, while the median time interval for civil cases in the Central District of California was 29.7 months. *See* Goodrich Decl., Ex. W. BTL's argument regarding the comparative congestion of each court not only fails, and this factor supports denying BTL's Motion.

## V.   <u>CONCLUSION</u>

The balance of applicable *Jones* factors strongly disfavors transfer. And because BTL's arguments are impugned by the evidence and lack the requisite specificity to satisfy its burden, BTL's Motion to dismiss or transfer should be denied.

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

Dated: March 29, 2024     **K&L GATES LLP**

*/s/ Christina N. Goodrich*
Christina N. Goodrich (SBN 261722)
Christina.Goodrich@klgates.com
Kelsi E. Robinson (SBN 347066)
Kelsi.Robinson@klgates.com
**K&L GATES LLP**
10100 Santa Monica Blvd., Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
FACSIMILE: +1 210 552 5001

Jeffrey R. Gargano (admitted *phv*)
Jeffrey.Gargano@klgates.com
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: +1 312 807 4226
Facsimile: +1 312 827 8000

Peter E. Soskin (SBN 280347)
Peter.Soskin@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8046
Facsimile: +1 415 882 8220

Caroline M. Vermillion (admitted *phv*)
Caroline.Vermillion@klgates.com
**K&L GATES LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: +1 212 536 3987
Facsimile: +1 212 536 3901

*Attorneys for Plaintiff InMode Ltd.*

- 25 -

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff InMode Ltd., certifies that this brief contains 6,969 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 29, 2024                    **K&L GATES LLP**

*/s/ Christina N. Goodrich*
Christina N. Goodrich (SBN 261722)
Christina.Goodrich@klgates.com
Kelsi E. Robinson (SBN 347066)
Kelsi.Robinson@klgates.com
**K&L GATES LLP**
10100 Santa Monica Blvd., Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
FACSIMILE: +1 210 552 5001

Jeffrey R. Gargano (admitted *phv*)
Jeffrey.Gargano@klgates.com
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: +1 312 807 4226
Facsimile: +1 312 827 8000

Peter E. Soskin (SBN 280347)
Peter.Soskin@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8046
Facsimile: +1 415 882 8220

Caroline M. Vermillion (admitted *phv*)
Caroline.Vermillion@klgates.com
**K&L GATES LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: +1 212 536 3987
Facsimile: +1 212 536 3901

*Attorneys for Plaintiff InMode Ltd.*

OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE