PAYNE & FEARS LLP
Scott O. Luskin, Bar No. 238082
sol@paynefears.com
Randy R. Haj, Bar No. 288913
rrh@paynefears.com
200 N. Pacific Coast Highway, Suite 825
El Segundo, California 90245
Telephone: (310) 689-1750
Facsimile:  (310) 689-1755

STERNE, KESSLER, GOLDSTEIN & FOX PLLC
J.C. Rozendaal (*pro hac vice*)
Chandrika Vira (*pro hac vice*)
Josephine Kim, Bar No. 295152
1101 K Street NW, 10th Floor
Washington, D.C. 20005
Telephone: 202.371.2600
Facsimile:  202.371.2540
Email: jcrozendaal@sternekessler.com
Email: cvira@sternekessler.com
Email: joskim@sternekessler.com

*Attorneys for Defendant BTL Industries, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INMODE LTD., <br><br> Plaintiff, <br><br> v. <br><br> BTL INDUSTRIES, INC. D/B/A BTL AESTHETICS, <br><br> Defendant. | Case No. 2:23-CV-08583-JWH-RAO <br> Hon. John H. Holcomb <br><br><br> **BTL INDUSTRIES, INC.'S REPLY TO INMODE LTD.'S OPPOSITION TO MOTION TO STAY ACTION PENDING *INTER PARTES* REVIEW** |

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    ARGUMENT ..................................................................................... 2

    A.    This Case Is In its Very Earliest Stage ...................................... 2

    B.    A Stay Will Allow the IPR to Simplify the Issues in the Case .............. 3

    C.    InMode Will Not Suffer Any Undue Prejudice ....................................... 5

        1.    The Parties are not direct competitors and any harm to InMode can be quantified with monetary damages ..................... 5

        2.    BTL timely filed its IPR petition and motion to stay. .................. 9

        3.    InMode's claims of loss of evidence are false ............................ 11

III.    CONCLUSION ................................................................................ 12

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY    CASE NO. 2:23-CV-8583

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Apple Inc.*,
  No. 09-04436 CW, 2010 WL 1753206 (N.D. Cal. Apr. 29, 2010)....................10

*Asetek Holdings, Inc v. Cooler Master Co.*,
  No. 13-CV-00457-JST, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014).................9

*Aten Int'l Co., v. Emine Tech. Co.*,
  No. SACV-09-0843 AG, 2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) .........................................................................................................2, 4, 5

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
  No. 6:12-CV-1727-ORL-37, 2013 WL 1969247 (M.D. Fla. May 13, 2013) ...............................................................................................................11

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
  No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) .................................................................................................................8

*Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*,
  No. SACV 19-1072 PSG (ADSx), 2021 WL 831028 (C.D. Cal. Feb. 25, 2021) ...............................................................................................................10

*Carl Zeiss A.G. v. Nikon Corp.*,
  No. 2:17-CV-07083-RGK-MRW, 2018 WL 5081479 (C.D. Cal. Oct. 16, 2018) .............................................................................................................11

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
  SA CV 18-2043-DOC, 2020 WL 2084674 (C.D. Cal. Jan. 13, 2020)...............10

*In re Intel Corp.*,
  No. 2021-168, 2021 WL 4427875 (Fed. Cir. Sept. 27, 2021) ............................2

*Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*,
  No. 2:20-cv-03773-RGK-JPR, 2021 WL 4732578 (C.D. Cal. May 7, 2021) .................................................................................................................5

*Medtronic, Inc. v. Axonics Modulation Techs., Inc.*,
No. SA CV 19-02115-DOC-JDE, 2020 WL 5087820 (C.D. Cal. May 8, 2020)..................................................................................................8

*PersonalWeb Techs., LLC v. Apple Inc.*,
69 F. Supp. 3d 1022 (N.D. Cal. 2014)...............................................................11

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
No. C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013)...............11

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
No. SACV 16-00300-CJC(RAOx), 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016)....................................................................................................11

*Polaris PowerLED Techs., LLC v. LG Elecs., Inc.*,
No. Sacv 20-00125JVS(DFMx), 2020 WL 6064964 (C.D. Cal. Aug. 26, 2020)........................................................................................................3

*Ravgen, Inc. v. Quest Diagnostics, Inc.*,
No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047615 (C.D. Cal. Feb. 2, 2022).................................................................................................................5

*Sonics, Inc. v. Arteris, Inc.*,
No. C 11-05311 SBA, 2013 WL 503091 (N.D. Cal. Feb. 8, 2013)....................8

*SpeakWare, Inc. v. Microsoft Corp.*,
SA CV 18-1293-DOC, 2019 WL 1878350 (C.D. Cal. Feb. 21, 2019)..............10

*Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*,
No. 18-CV-06737-JST, 2019 WL 1905161 (N.D. Cal. Apr. 29, 2019)..............................................................................................................9

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013)...............................................................8

*UPL NA, Inc. v. Tide Int'l (USA), Inc.*,
CV 19-1201-RSWL-KSx, 2021 WL 663128 (C.D. Cal. Feb. 19, 2021)............................................................................................................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014).........................................................................8

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
   No. EDCV 14-01153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20,
   2015) ................................................................................................................... 9

**Statutes**

35 U.S.C. § 315(b) ................................................................................................. 9

35 U.S.C. § 315(e)(2) ............................................................................................ 5

**Other Authorities**

Rule 26(f) .............................................................................................................. 6

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY    Case No. 2:23-CV-8583

## I.       INTRODUCTION

The facts supporting a stay are simple: (1) this case is in its infancy, (2) the PTAB instituted BTL's IPR petition on *all* claims of the single asserted patent on *all* grounds, which means that the PTAB's final written decision will moot or simplify the issues in this case, and (3) there is no evidence that a stay would prejudice InMode.

InMode cannot fight these facts. So, instead its Opposition to BTL's stay motion is rife with mischaracterizations of the facts and the law supporting stays. InMode first incorrectly states that "discovery is well underway." Opp. at 13–14. In fact, BTL has not even answered InMode's complaint and InMode has not yet identified which patent claims it is asserting. InMode then suggests that the PTAB's institution decision did not address all claims and all grounds to argue that a stay would not simplify the case. But, that is incorrect as well. The PTAB did indeed institute on all claims on all grounds, so a PTAB decision in favor of BTL could moot the need for this case entirely. Even if the PTAB cancelled only some claims or found the patent to be patentable, that would either limit the claims before this Court, or limit the invalidity arguments BTL could assert in the litigation, thereby simplifying the case.

InMode's descriptions of purported prejudice are also incorrect; the requested stay would cause no undue prejudice to InMode. Although InMode asserts that InMode and BTL are direct competitors, the "evidence" InMode cites—consisting of excerpts from third-party websites or self-serving InMode statements—does not establish the alleged direct competition. Nor has BTL dragged its feet in asking for a stay. BTL promptly filed its IPR petition six months ahead of the statutory deadline for doing so and filed its motion to stay this case just two weeks after the PTAB instituted the IPR. Finally, InMode accuses BTL of hiding evidence, a serious accusation that InMode fails to support—indeed, the evidence shows that, far from hiding anything, BTL did nothing more than take down a website that had outdated

1

information that, in any case, is irrelevant to InMode's allegation of infringement in this case.

The IPR process is "designed to give the [PTO] an opportunity to correct its mistakes, to give courts the benefit of the agency's consideration of the effect of prior art on patents being asserted in litigation, and to reduce the burden of litigation on the parties and the courts." *In re Intel Corp.*, No. 2021-168, 2021 WL 4427875, at *2 (Fed. Cir. Sept. 27, 2021). To take full advantage of the PTAB's review, make discovery significantly less onerous for the parties and the Court, and streamline disputed issues for trial, the Court should stay this case.

## II.    ARGUMENT

The parties agree on the standards the courts in this district use to consider whether a stay of the litigation is appropriate. *See* Op. Br. at 4; Opp. at 7. Taking the *Aten* factors in order, all the factors favor a stay.

### A.    This Case Is In its Very Earliest Stage

InMode's assertion that "discovery is well underway" (at 13) not only mischaracterizes the scope of discovery that has occurred thus far but also ignores the real question before the Court for the stay. The Court should consider not whether discovery has begun in the case but "whether discovery is complete and whether a trial date has been set." *Aten Int'l Co., v. Emine Tech. Co.*, No. SACV-09-0843 AG (MLGx), 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010).

There can be no dispute that discovery is not complete or that a trial date has not been set. Although InMode filed its initial Complaint in October 2023, the case remains in its procedural infancy. BTL has a pending Motion to Dismiss or Transfer, which means that BTL has not even answered InMode's complaint; the Court has yet to set a scheduling order; and undeniably, a trial date has not been set. It is not even clear which claims will be at issue in this case as InMode has not served its preliminary infringement contentions yet.

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY    Case No. 2:23-CV-8583

The only discovery that has occurred was limited to the issue of venue alone. There has been *no* written discovery, document production, or depositions on the allegations in the complaint, including infringement, validity, or damages. InMode does not, and cannot, dispute this. InMode's argument that "financial and technical documents" (at 14) have already been produced is misleading; BTL produced no technical documents and the only financial documents it produced were sales reports of its products in Massachusetts and California, which are of limited relevance outside of the pending transfer motion.

Because "there is more work ahead of the parties and the Court than behind," this factor favors a stay. *Polaris PowerLED Techs., LLC v. LG Elecs., Inc.*, No. Sacv 20-00125JVS(DFMx), 2020 WL 6064964, at *2 (C.D. Cal. Aug. 26, 2020) (internal citations and quotations omitted).

**B.      A Stay Will Allow the IPR to Simplify the Issues in the Case**

InMode's argument that the PTAB's final decision on BTL's IPR will not simplify the district court proceeding mischaracterizes both the PTAB's decision and the case law.

First, InMode's argument (at 14–15) that the IPR will not simplify the issues because the Institution Decision did not apply to all asserted claims and grounds is flatly incorrect. The PTAB found that "an *inter partes* review of claims 1–58 of the '511 patent is instituted with respect to **all** grounds set forth in the Petition." D.I. 91-2 at 25 (emphasis added). That is, the PTAB instituted the IPR petition on *all claims* of the patents and *both* grounds included in BTL's IPR petition. To the extent that the PTAB did not go into detailed discussions as to individual grounds and claims, it is because InMode did not file a Patent Owner's Preliminary Response, thus giving the PTAB no arguments to consider. Because the PTAB found Ground 1—which challenged all 58 of the claims of the '511 patent—persuasive for the purpose of institution, it did not discuss in detail Ground 2, which challenged only a subset (43–58) of the claims. *See* D.I. 91-2 at 24. But that does not change the fact that a final

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY      Case No. 2:23-CV-8583

written decision by the PTAB holding all the claims unpatentable would obviate the need for a trial in the present case altogether.

Second, InMode appears to argue (at 14 and 16) that any institution decision is simply speculative and cannot reach *Aten*'s requirement that "a stay **will simplify** the issues in question and trial of the case." D.I. 92 at 16 (InMode quoting *Aten* and adding its own emphasis). InMode's reading of *Aten* is incorrect: in fact, the *Aten* Court, considering a reexamination proceeding before USPTO, considered this exact argument and rejected it finding:

> "Aten first argues that any outcome from reexamination is speculative, and thus there is no guarantee that any of the [asserted] claims would be narrowed. The Court disagrees. Because 92% of patents being reexamined change in some way (PTO Reexamination Filing Data, Docket No. 145-1, at 2), the Court risks enabling futile litigation that may have to be repeated if the patent changes. The Court cannot ignore this possibility."

*Aten*, 2010 WL 1462110, at *7.

Current-day statistics for IPRs are nearly identical to those cited in *Aten*. The PTAB Trial Statistics released for Fiscal Year 2024 found that only 9.2% of patents that were the subject of instituted IPR petitions[1] survived with all claims found patentable. *See* Exhibit A at 10. Therefore, 90.8% of the time, an IPR either obviates the need for trial or simplifies issues before the Court.

In this case, there is no circumstance under which the stay will not simplify the case. Were the PTAB to find the patent patentable, BTL would be statutorily estopped from asserting certain prior art.[2] And, even if the entire patent is not cancelled, because BTL's IPR was instituted, cancellation of individual claims,

---

[1] Out of the 1,212 petitions that ended in FY2024, 338 were denied institution and 148 settled pre-institution. *See* Exhibit 1 at 9–10. Of the remaining 726, only 67 received a final written decision where all challenged claims were determined to be patentable. *See id.* at 10.

[2] InMode appears to argue (at 17) that BTL is not agreeing to an estoppel if the PTAB finds its patent patentable. But, its not clear how BTL could do that given that there are statutory estoppel provisions. 35 U.S.C. § 315(e)(2).

claim constructions entered by the PTAB, settlement by the parties, or some combination of the foregoing, issues are likely to be simplified in this case. Following InMode's "argument to its logical conclusion would mean denying stays relating to all [IPR] requests," *Aten*, 2010 WL 1462110, at *7, yet this court and others routinely issue such stays. Even in the cases that InMode cites for the quote, "the Court does not presume to know how the PTAB may rule in the IPRs," both Courts ultimately decided that the simplification of the case factor was neutral. *See Ravgen, Inc. v. Quest Diagnostics, Inc.*, No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047615, at *3 (C.D. Cal. Feb. 2, 2022); *Kirsch Rsch. & Dev., LLC v. Epilay, Inc.*, No. 2:20-cv-03773-RGK-JPR, 2021 WL 4732578, at *3 (C.D. Cal. May 7, 2021).

Because the PTAB, after considering BTL's evidence and arguments in its petition, concluded that there is a reasonable likelihood that BTL will prevail in invalidating all the claims of the '511 patent, a stay will allow for the IPR to simplify issues in this case.

## C.     InMode Will Not Suffer Any Undue Prejudice

InMode relies on three incorrect assumptions to argue that a stay will prejudice it: (1) the parties are direct competitors, (2) that BTL delayed in filing its IPR petition and motion to stay, and (3) staying the case might lead to a potential loss of evidence. None of these facts are true.

### 1.     The Parties are not direct competitors and any harm to InMode can be quantified with monetary damages.

InMode argues (at 8) that a stay prejudices it primarily because the parties' status as direct competitors would cause harm that cannot be compensable by money damages. But, InMode's fundamental premise, that BTL and InMode are direct competitors, is incorrect. Tellingly, InMode did not identify a single InMode product that directly competes with a BTL accused product in its Opposition. Although InMode purports to have "hard evidence" (at 9) of direct competition, that evidence consists of third-party websites and a self-serving InMode earnings call

5

report, none of which actually demonstrates direct competition. We take each of InMode's mischaracterizations of the facts regarding competition in turn.

First, InMode did not, as it claims (at 10) list in its complaint Votiva as a radiofrequency-based treatment that competes with a BTL accused product (citing FAC, ¶ 44.). InMode's FAC only discloses "by way of example" nine products that InMode launched between 2010 and 2021 "in the aesthetics solutions market," and included in that list, Votiva. D.I. 64, ¶ 44. There is no mention that Votiva, or any of the listed products, competes directly with any BTL accused products, and InMode did not define the "aesthetics solutions market" anywhere in InMode's FAC. InMode's citations (at 10) of the Rule 26(f) report point to a self-serving attorney statement unsupported by any actual specific facts.

Second, InMode's exhibits purportedly showing InMode and BTL as direct competitors are third-party websites and an InMode earnings call report. Exhibit 1 appears to be a compilation by a company called Tracxn, listing BTL's *63* competitors, of which InMode is one. It's unclear how a list of companies listing all their offerings suggests that InMode and BTL are direct competitors in the specific technology at issue. Interestingly, when BTL ran a search for InMode's top competitors on the same website, BTL was not listed. *See* Exhibit B. Exhibit 2 is a website from what looks like a clinic called "Foundations." InMode provides no explanation as to what this clinic is or why its characterization of the products are relevant. In any event, the website proves BTL's point. In the exhibit, InMode's MorpheusV and vTone products are presented along with BTL's Emfemme 360 product, which is a BTL product that InMode accused of infringement. *See* D.I. 92-3. MorpheusV is described as a "treatment combin[ing] both radiofrequency (RF) and microneedling to remodel the vaginal tissue" that is "performed under local anesthesia." *Id.* at 2, 4. vTone is a "procedure to strengthen weak pelvic floor muscles and improve urinary incontinence symptoms" using "electrical muscle stimulation." *Id.* at 3, 5. In contrast to both InMode devices, BTL's "Emfemme 360

6

is a pain-free, in-office procedure that requires no anesthesia" where "topical radiofrequency is applied to heat the internal vaginal walls and external labia." *Id.* at 4–5. So, the products use different technologies: BTL's Emfemme 360 uses radiofrequency, MorpheusV uses radiofrequency and microneedling, vTone uses electrical stimulation; their treatments are performed under different conditions: Emfemme 360 requires no anesthesia while the MorpheusV does; and they have different indications: Emfemme 360 stimulates tissue remodeling and new collagen growth, while vTone strengthens weak pelvic floor muscles and improves urinary incontinence symptoms.

InMode's Exhibit 3 is an earnings call report for InMode's 2023 Q3 earnings. The only possibly relevant portion is a single quote from InMode's CEO Moshe Mizrahy to investors in response to a question about the present litigation where he says: "[BTL] are competing with us and there's no reason why we will not protect our technology and knowhow." D.I. 93-4 at 18. This highly general self-serving statement does not support InMode's argument that InMode's products directly compete with BTL's accused products in a way that would prevent InMode from being made whole by money damages if it were to eventually prevail in this suit.

InMode's Exhibit 4[3] appears to be the website of one Dr. Berman, who lists, among other things, a list of products from BTL, InMode and other companies that patients may use as vaginal rejuvenation treatments, alone or in combination, for a host of different conditions. D.I. 92-5 at 9. Dr. Berman's list of products does not rise to the level of evidence supporting direct competition.

InMode then argues (at 10) that it will be harmed because BTL continues to bring new products to the market, naming the Exion product as one such example. While InMode did accuse the Exion product in its FAC, InMode did not identify any InMode product that competes with it.

---

[3] InMode appears to have incorrectly numbered its exhibits in its Opposition. This exhibit is labeled Exhibit 4 but cited as Exhibit 5 in InMode's Opposition.

7

Moreover, even if the parties are competitors, InMode does not identify any harm that could not be resolved though money damages. *See Sonics, Inc. v. Arteris, Inc.*, No. C 11-05311 SBA, 2013 WL 503091, at *4 (N.D. Cal. Feb. 8, 2013) ("Plaintiff's legal and equitable remedies will be available when the stay is lifted because a stay does not foreclose Plaintiff from any remedy. Indeed, Plaintiff will be fully compensated for delays if it prevails at trial following reexamination.") (internal citations omitted).

And, finally, InMode's argument (at 10) that it will face significant prejudice if its request for a permanent injunction is delayed is unpersuasive as its "failure to seek a preliminary injunction belies its claims of undue prejudice in the marketplace." *UPL NA, Inc. v. Tide Int'l (USA), Inc.*, CV 19-1201-RSWL-KSx, 2021 WL 663128, at *4 (C.D. Cal. Feb. 19, 2021); *Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, No. SA CV 19-02115-DOC-JDE, 2020 WL 5087820, at *2 (C.D. Cal. May 8, 2020) (granting a stay where the plaintiffs "[did] not explain why they did not move for a preliminary injunction"). Indeed, the "Federal Circuit has noted that, while not determinative, a patentee's failure to move for a preliminary injunction contradicts the assertion that the patentee requires immediate relief." *UPL NA*, 2021 WL 663128, at *4 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014)).

InMode makes no attempt to explain why it did not seek a preliminary injunction and instead cites cases where patentees established specific harm that could not be compensated by monetary damages to argue that its failure to move for a preliminary injunction should not be held against it. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1034 (C.D. Cal. 2013) (finding failure to seek a preliminary injunction does not negate prejudicial harm because the parties were direct competitors and there was a risk that "Plaintiff may lose customers"); *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) (finding

8

irreparable harm even absent a request for a preliminary injunction because of "pressing marketplace harms detailed in the declaration of [patentee's] product marketing manager"). InMode has not established any of the harms that the patentees established in their cited cases: that the parties are director competitors, that it might lose customers, or that there are pressing marketplace harms. Just like in this case, in *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP (SPx), 2015 WL 1809309, at *5 (C.D. Cal. Apr. 20, 2015), a case cited by InMode, the court did not find harm to Plaintiffs because Plaintiffs had not put into the record any facts to support the fact that monetary relief was not sufficient.

### 2.    BTL timely filed its IPR petition and motion to stay.

InMode argues that BTL delayed in filing its IPR petition but neither the facts nor the law support its position. By law, a party sued for patent infringement has one year to file an IPR against the patent, *see* 35 U.S.C. § 315(b), for good reason: IPRs are complex and technically intensive submissions that take substantial time to prepare. BTL drafted and filed the petition as quickly as it could and did so within six months of InMode filing its Complaint. Although a previous petitioner had challenged the '511 patent in a prior IPR, BTL still needed to prepare its own submission by reviewing all the prior art and making changes in light of new changes in the law. Where, as here, a defendant instead is diligent in filing its petitions well before the statutory deadline, this factor weighs in favor of a stay. *See Asetek Holdings, Inc v. Cooler Master Co.*, No. 13-CV-00457-JST, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014) ("Delay alone [within the statutory deadline] does not usually constitute undue prejudice because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.") (citations and quotations omitted).

And, in fact, courts have found no undue delay where IPRs have been filed in periods longer than 6 months. *See Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*, No. 18-

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY    Case No. 2:23-CV-8583

CV-06737-JST, 2019 WL 1905161, at *5 (N.D. Cal. Apr. 29, 2019) (no undue delay when IPR petitions filed seven months after the complaint was filed). The cases cited by InMode in support of its argument had progressed further in their case schedule and involved longer delays of eight and ten months. *See Affinity Labs of Tex. v. Apple Inc.*, No. 09-04436 CW, 2010 WL 1753206, at *1 (N.D. Cal. Apr. 29, 2010) (after a motion to transfer was granted); *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. SACV 19-1072 PSG (ADSx), 2021 WL 831028, at *1 (C.D. Cal. Feb. 25, 2021) (after the Court had set dates for trial and issued a claim construction order).

InMode's argument that BTL delayed in filing its motion is similarly deficient. BTL filed this motion just two weeks after the PTAB's institution decision. InMode argues that this timing is prejudicial but offers no explanation as to why that might be. Further, this argument directly contradicts InMode's position that a stay will not simplify the issues of this case: if BTL had filed its motion before institution, it would have been more difficult to predict whether the issues of a case are likely to be simplified, but if, as now, BTL files its motion after institution, the delay then becomes unduly prejudicial. InMode cannot have its cake and eat it too.

Furthermore, InMode ignores the multitude of cases showing that this Court generally disfavors pre-institution stays. *See, e.g.*, *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, SA CV 18-2043-DOC (ADSx), 2020 WL 2084674, at *2 (C.D. Cal. Jan. 13, 2020) (disfavoring a pre-institution stay because "while the IPR *might* simplify this proceeding *if* it were instituted, there is also a significant chance that the PTAB will decide not to institute IPR, and this Court will have thrown off the entire scheduling of this case for no benefit") (emphasis in original); *SpeakWare, Inc. v. Microsoft Corp.*, SA CV 18-1293-DOC (DFMx), 2019 WL 1878350, at *3 (C.D. Cal. Feb. 21, 2019) ("Considering the totality of the circumstances, the Court finds a stay is not appropriate at this time, particularly

given that the PTAB has yet to decide whether to institute the IPR on [the asserted claims]."); *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2016 WL 7496740, at *2 (C.D. Cal. Nov. 17, 2016) ("the 'stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed'") (quoting *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727-ORL-37, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013).

BTL's prompt filing of its IPR petition and its motion to stay weighs in favor of a stay.

### 3.    InMode's claims of loss of evidence are false.

InMode argues (at 12) that a stay pending the resolution of the IPR could last 2.5 years, which would result in unduly prejudice, yet courts have found that "[d]elays based on the length of the PTO's review *standing alone* do not amount to undue prejudice." *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958-PSG, 2013 WL 4475940, at *4 (N.D. Cal. Aug. 16, 2013). Moreover, "[c]ourts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014). And, InMode has made no such showing.     InMode appears to argue (at 12) that it would be prejudiced by a stay because a stay could last until July 2027 and the '511 patent expires in May 2030. But, its not clear what disadvantage or prejudice it would suffer. InMode's reliance on *Carl Zeiss* does not help it; there trial was scheduled three months before patent expiration and defendants filed their stay motion two months before trial. *See Carl Zeiss A.G. v. Nikon Corp.*, No. 2:17-CV-07083-RGK-MRW, 2018 WL 5081479, at *1, *2 (C.D. Cal. Oct. 16, 2018). In contrast, InMode's patent does not expire for another 6 years, and this case is in its infancy. Further, were InMode's patent to be found valid and InMode to succeed on its infringement allegations, it

would presumably ask for and receive damages for infringement during the period the litigation was stayed, making it whole.

InMode concludes its section on alleged harm by making unsupported inflammatory assertions (at 13) that "BTL has already demonstrated on multiple occasions that it is willing to hide evidence" and that "BTL has removed webpages containing information relevant to InMode's allegations regarding jurisdiction and infringement." In support, InMode cites a singular webpage related to BTL's Beverly Hills location that was removed. D.I. 92 at 13. As InMode is well aware from the venue discovery that it received, the purpose and direction of the Beverly Hills location changed from its original intention. *See* D.I. 45-2 at 93:5–11; D.I. 72-1 at 4; D.I. 83 at 2. Accordingly, the outdated website was taken down. Contrary to InMode's accusations, no nefarious motives existed behind the removal of the website, nor is the website relevant to InMode's claims of infringement.

Because BTL filed its IPR petition and stay motion promptly and InMode has not made a showing of prejudice beyond the delay necessary for the IPR proceeding, InMode will not be unduly prejudiced, and a stay should be granted.

## III.    CONCLUSION

BTL respectfully requests that its motion to stay be granted.

DATED this 8th day of November, 2024        Payne & Fears LLP

_____*Randy R Haj*_____
Randy R. Haj, Bar No. 288913
rrh@paynefears.com

*Attorneys for Defendant*
*BTL Industries, Inc.*

4867-2029-8999.1

12

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY        Case No. 2:23-CV-8583