JS-6

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

INMODE LTD,

          Plaintiff,

     v.

BTL INDUSTRIES, INC. d/b/a BTL
   AESTHETICS,

          Defendant.

Case No. 2:23-cv-08583-JWH-RAOx

**ORDER GRANTING MOTION OF
BTL INDUSTRIES, INC. TO
DISMISS OR IN THE
ALTERNATIVE TRANSFER FOR
LACK OF VENUE [ECF No. 72]**

Before the Court is the second motion of Defendant BTL Industries, Inc. to dismiss the Amended Complaint of Plaintiff InMode Ltd. for improper venue, or, in the alternative, to transfer the case to the District of Massachusetts.[1] BTL's Motion is fully briefed.[2] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and opposition, for the reasons set forth herein the Court orders that BTL's Motion is **GRANTED**, and this case is **TRANSFERRED** to the District of Massachusetts.

## I.  BACKGROUND

InMode alleges that BTL's vaginal remodeling devices infringe U.S. Patent No. 8,961,511 (the "'511 Patent").[3] In January 2024, BTL filed its initial motion to dismiss or transfer for improper venue.[4] The Court denied that motion without prejudice,[5] directed the parties to meet and confer, and granted InMode leave to file an amended pleading.[6] The Court suggested that InMode incorporate jurisdictional discovery that it conducted into its amended pleading, and it encouraged InMode to present its best pleaded claims.[7] The Court warned that it would be unlikely to allow InMode further leave to amend.[8]

---

[1]  Def.'s Mot. to Dismiss (the "Motion") [ECF No. 72].

[2]  *See* Pl.'s Opp'n to Motion (the "Opposition") [ECF Nos. 78 & 82 (sealed)]; Reply in Supp. of Motion (the "Reply") [ECF No. 83]; *see also* First Am. Compl. (the "Amended Complaint") [ECF No. 64].

[3]  *See generally* Compl. (the "Complaint") [ECF No. 1]; *see also* Amended Complaint, Ex. 20 (the '511 Patent) [ECF No. 64-22].

[4]  *See generally* Def.'s Initial Mot. to Dismiss [ECF No. 24].

[5]  Order Denying Initial Mot. to Dismiss [ECF No. 63] 2:13-14.

[6]  *Id.* at 2:13-20.

[7]  *Id.* at 2:20-3:4.

[8]  *Id.*

InMode filed the Amended Complaint in May 2024.[9]  BTL then filed the instant Motion.[10]

## II.  LEGAL STANDARD

### A.    Motion to Dismiss

The Federal Rules of Civil Procedure provide that a court may dismiss a case for improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  When a defendant files a motion to dismiss for improper venue, the plaintiff has the burden of proving that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In deciding a Rule 12(b)(3) motion, a court may consider facts outside the pleadings, and it need not accept the allegations in the plaintiff's pleading as true.  *See Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005); *see also Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  If contested factual issues arise, the court is obligated to draw all reasonable inferences and to resolve the factual conflicts in favor of the non-moving party, or, alternately, the court may conduct an evidentiary hearing to resolve the disputed facts.  *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138–39 (9th Cir. 2004).

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017).  When the defendant does not "reside in" the district for venue purposes, the plaintiff may allege that the

---

[9]    *See generally* Amended Complaint.

[10]    *See generally* Motion.

defendant has committed acts of infringement and has a regular and established place of business in the district.  *See* 28 U.S.C. § 1400(b).

"To show that a defendant has a regular and established place of business, there are three requirements:  '(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant.'"  *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1287 (Fed. Cir. 2021) (quoting *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)).  "In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts."  *Cray*, 871 F.3d at 1362.  "[N]o one fact is controlling."  *Id.* at 1366.

**B.    Motion to Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  A district court possesses broad discretion to transfer a case to another district where venue is also proper.  *See Bowen v. JEA Senior Living Health & Welfare Benefit Plan LLC*, 2020 WL 7755681, at *1 (C.D. Cal. Nov. 19, 2020); *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007).

If venue in the transferee district is proper and the case otherwise could have been brought there, courts then consider whether transfer would be fair and convenient.  The Ninth Circuit has articulated a non-exhaustive list of factors for a court to weigh when considering the convenience of the parties and witnesses and the interests of justice, including the following:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

### III.  ANALYSIS

First, the Court considers whether venue is proper under 28 U.S.C. § 1400(b).  BTL does not reside in this forum; rather, BTL resides in Delaware.[11]  *See TC Heartland*, 581 U.S. at 262.  Thus, the Court considers only whether BTL has a regular and established place of business in this district.  *See* 28 U.S.C. § 1400(b).

### A.    Regular and Established Place of Business

Both parties agree that BTL has a showroom in Beverly Hills, called the Beverly Hills Body Boutique (the "Boutique").[12]  The Boutique is a physical establishment belonging to BTL.[13]  Thus, the first and third requirements are met.  *See Andra*, 6 F.4th at 1287.  The parties dispute that the Boutique is a

---

[11]    Decl. of Jason Wooden (the "Wooden Declaration) [ECF No. 24-2] ¶ 3.

[12]    Amended Complaint ¶ 10; Motion 1:8-14 ("BTL has a showroom in Beverly Hills, which is used sporadically, by appointment only, when a BTL sales employees deems it necessary.  No employees report to work in the location and the room does not even have a computer.").

[13]    Amended Complaint ¶¶ 10-17.

regular and established place of business.[14] InMode characterizes the Boutique as a storefront.[15] BTL asserts that the Boutique as more akin to a storage facility.[16]

To evaluate whether the Boutique is a regular and established place of business, the Court considers the following facts from the Amended Complaint and the parties' jurisdictional discovery:

- BTL employs sales associates in this District.[17]
- BTL maintains a spreadsheet of prospective customers and healthcare providers in this District.[18]
- BTL has been using the Boutique at least since May of 2021.[19]
- At the time of the 2021 opening of the Boutique, BTL intended to use the facility as "an immersive storefront offering medical aesthetic professionals a one-stop shop."[20]
- BTL presently conducts demonstrations and trainings for prospective customers and healthcare providers at the Boutique.[21] In 2023, BTL

---

[14]    Motion 1:8-14.

[15]    *See* Opposition 12:23-35; Amended Complaint ¶ 10.

[16]    Motion 7:11-13.

[17]    Amended Complaint, Ex. 13 [ECF Nos. 64-15 & 66-6 (sealed)].

[18]    *Id.*, Ex. 11 [ECF Nos. 64-13 & 66-5 (sealed)].

[19]    *Id.* at ¶ 11.

[20]    *Id.* at ¶ 14.

[21]    Decl. of Christina N. Goodrich (the "Goodrich Declaration"), Ex. 3 [ECF No. 45-3] (document listing appointments at the Boutique); Amended Complaint ¶¶ 15-17.

averaged about 10 appointments per month at the Boutique.[22]  "Closing a deal at the showroom occurs approximately once a month."[23]

- BTL contends that the needs of the company changed during the pandemic and that BTL presently uses the Boutique only sporadically, as a showroom to demonstrate treatments.[24]

- Employees do not work at the Boutique regularly; rather, the Boutique is used only for scheduled demonstrations.[25]

- The Boutique does not have a manager or computer.[26]

- For the accused product—the Emfemme device—BTL employees are not allowed to perform demonstrations or hold events in California.[27]  The Boutique does not have any marketing materials for the Emfemme device.[28]

Although there is "no precise rule," the Court finds that the Boutique is a regular and established place of business under the available authority.

First, BTL uses the Boutique for business activities, such as performing demonstrations and trainings.  BTL also appears to store at least some products and marketing materials at the Boutique.  *See Cray*, 871 F.3d at 1362 (quoting *In re Cordis Corp.*, 769 F.2d 733, 735 (Fed. Cir. 1985)) ("A defendant used its employees' homes to store its 'literature, documents and products' and, in

---

[22]    Amended Complaint ¶¶ 15-17.

[23]    Wooden Declaration ¶ 9.

[24]    Goodrich Declaration, Ex. 2 (the "Wooden Deposition") [ECF No. 45-2] 92:2-11 & 93:5-11; Wooden Declaration ¶ 8.

[25]    Wooden Declaration ¶ 9.

[26]    Wooden Deposition 99:13–16 & 121:21–122:4.

[27]    Wooden Declaration ¶¶ 10 & 13.

[28]    *Id.* at ¶ 12.

some instances, like distribution centers, storing inventory that the employees then directly took to its clients.").

Second, BTL's use of the Boutique is more regular than "sporadic." Records show that BTL averaged approximately 10 appointments at the Boutique per month.  BTL's representative further testified that BTL closed approximately one deal per month at the Boutique.  Although the numbers of appointments and sales are not high, they amount to more than sporadic activity.  The appointments and sales activity were not "merely temporary," nor do they "form some special work or particular transaction."  *Cray*, 871 F.3d at 1362 (internal citations omitted).  The appointments and sales activity amount to "a series of [] acts" as opposed to "a single act."  *Id.* (internal citations omitted).

Finally, the Boutique is an established place.  BTL opened the Boutique in 2021, and BTL has been using it on at least some basis since that time.  That type of use is permanent.  *See Cray*, 871 F.3d at 1363.  It amounts to more than semiannual trade show activity or use for only a particular transaction.  *See id.*

Accordingly, the Court does not find venue improper here.

**B.    Transfer**

Venue is proper in the District of Massachusetts because BTL maintains its corporate headquarters and principal place of business in that district.[29]  *See* 28 U.S.C. § 1400(b).  The parties do not dispute that this action could have been brought in the District of Massachusetts, and, instead, they focus on the *Jones* factors.[30]  Accordingly, the Court considers whether a transfer would be fair and convenient.

---

[29]    *Id.* at ¶ 3.

[30]    The Court agrees that Factors 1, 2, and 9 do not apply in view of the facts of this case.  *See* Motion 11 n.1.

### 1.    Factor 3:  Plaintiff's Choice of Forum

"Usually, a plaintiff's choice of forum is accorded substantial weight that a defendant seeking transfer must overcome with a strong showing of inconvenience."  *Ningbo Futai Elec. Ltd. v. QVC, Inc.*, 2023 WL 4291652, at *2 (C.D. Cal. May 8, 2023) (internal citations omitted).  However, a plaintiff's choice is owed little deference when the plaintiff is a foreign entity with a foreign inventor and no ties to the transferor district.  *See id.*  Here, InMode is a corporation organized under the laws of Israel.[31]  The inventor of the '511 Patent is from Woodside, California.[32]  Thus, this factor weighs only slightly against transfer.

### 2.    Factor 4:  The Parties' Respective Contacts with the Forum

BTL's contacts with Massachusetts are extensive.  BTL is headquartered in that state.[33]  Employees knowledgeable about the accused products work in Massachusetts, and BTL keeps its stock of devices there.[34]  Those contacts support a transfer.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see also Ningbo Futai Elec. Ltd. v. QVC, Inc.*, 2023 WL 4291652, at *2–*3 (C.D. Cal. May 8, 2023).

BTL's contact with California is more limited.  BTL maintains the Boutique here, as discussed above.  A portion of BTL's salesforce also works in

---

[31]    Amended Complaint ¶ 2.

[32]    *See* '511 Patent.

[33]    Wooden Declaration ¶ 3.

[34]    *Id.* at ¶ 4.

California; however, BTL employs sales personnel nationwide.[35] "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011).  Still, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id.*

Here, InMode's allegations do not establish the kind of significant connections that would undermine a transfer.  InMode alleges, "[u]pon information and belief," that BTL contracts with more third party providers in California than other districts, sells more products in California than other districts, and has more prospective customers in California than other districts.[36] InMode also concludes that "[a] significant portion of BTL's business is located in this District."[37]  In its pleading, InMode cites screen captures of provider search functionality and regional employee information.[38]  InMode does not plead facts regarding the number of sales, employees, and providers.  In view of its opportunity to amend and the jurisdictional discovery that it was permitted to take, it is unclear why InMode did not amend its pleading to allege those facts instead of merely stating generalized conclusions.  The Court is not obligated to accept InMode's conclusions as true.  InMode's reliance on *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2019 WL 6482222 (C.D. Cal. July 8, 2019), is also unpersuasive in view of the factual differences.  *See id.*, 2019 WL 6482222, at *4 (relying on the plaintiff's preliminary investigation that [the defendant]

---

[35]     *See id.*; Amended Complaint ¶ 21.

[36]     Amended Complaint ¶¶ 21, 22, & 29.

[37]     *Id.* at ¶ 24.

[38]     *Id.* at ¶¶ 21, 22, & 29 (citing Screen Captures, Exhibits 6-11 [ECF Nos. 64-8 through 64-12]; *id.*, Ex. 13 [ECF Nos. 64-15 & 66-6 (sealed)]; *id.*, Ex. 14 [ECF Nos. 64-16 & 66-7 (sealed)]).

-10-

operated "approximately 16 business locations in the state of California," which was "far more" than in any other state).

As discussed above, InMode is a foreign company, and it does not have contacts with either California or Massachusetts.[39]  For all of those reasons, Factor 4 favors a transfer.

### 3.    Factor 5:  The Contacts Relating to Plaintiff's Claim for Relief in the Chosen Forum

Both parties assert that BTL does not make the accused products. Instead, the relevant accused activity is the import, sale, and offer for sale of the accused devices.[40]  BTL argues that the evidence concerning those activities is located in Massachusetts.[41]  For example,  Wooden—BTL's director of operations—testified that BTL does not make the accused products, that it imports them into Boston, and that it stores the products at its headquarters in Massachusetts.[42]  BTL contends that any product inspection would take place there.[43]  Wooden further testified that all primary functions of BTL, including finance, quality, shipping, and HR, are located in Massachusetts.[44]  Wooden also testified that the product manager for the Ultra Femme and Emfemme devices

---

[39]    InMode argues in its Opposition that it has some contacts with California, including an office in Irvine, California.  *See* Opposition 6:24-25.  However, InMode does not actually plead those facts in its Amended Complaint. Accordingly, the Court declines to consider them for the purpose of the transfer analysis.

[40]    Motion 14:3-6; *see also* Opposition 7:7-8.

[41]    Motion 13:25-26.

[42]    Wooden Deposition 15:10-12 & 19:14-21.

[43]    *See id.*

[44]    *Id.* at 7:5-11.

works in Massachusetts.[45]  He explained that BTL maintains a central document repository in Massachusetts, although employees can access it from other locations.[46]

Only one product, the Emfemme device, is located in California, and it is not used for demonstrations and trainings.[47]  BTL does not keep marketing materials for either the Emfemme device or the Ultrafemme device, which was discontinued, in California.[48]

InMode again argues that BTL contracts with more third parties in California than in other parts of the country.[49]  Again, as discussed above, those conclusory allegations are not persuasive, given the opportunity for InMode to take jurisdictional discovery.  InMode further argues that BTL employs only seven sales representatives in Massachusetts.[50]  InMode presumes that BTL employs eight representatives that exclusively cover the Los Angeles area.[51]  InMode did not amend its complaint to include those figures.  Still, even taking those allegations as true, the Court does not find a difference of one sales representative a compelling reason to deny the transfer.

For the foregoing reasons, the Court finds that BTL's contacts with Massachusetts concerning the import, sale, and offer for sale of the accused products outweigh contacts with California.  Accordingly, this factor favors a transfer.

---

[45]     *Id.* at 53:12-15.

[46]     *Id.* at 121:3-20.

[47]     Wooden Declaration ¶ 10.

[48]     *Id*. ¶¶ 5 & 12.

[49]     Amended Complaint ¶¶ 21, 22, & 24.

[50]     Opposition 18:20-19:4.

[51]     *Id.*

-12-

### 4. Factor 6: The Differences in the Costs of Litigation in the Two Forums

As discussed above, the physical accused products and key witnesses for BTL are all located in Massachusetts. This factor favors transfer.

### 5. Factor 7: The Availability of Compulsory Process to Compel Attendance of Unwilling Non-party Witnesses

InMode argues that Factor 7 weighs against transfer because (1) customers and third-party providers are in California; and (2) Dr. Matlock and Dr. Alinsod are necessary witnesses. Those arguments are not persuasive.

First, as discussed above, BTL sells products to customers and third-party providers nationwide. InMode does not explain why the customers and providers in California have unique knowledge that customers and providers in and near Massachusetts would not have. Rather, InMode appears to argue that those witnesses are necessary based upon volume.[52] For instance, InMode identifies 20 providers in California but only five in Massachusetts.[53] The volume of witnesses, alone, does not compel the denial of a transfer here. Also, for the purpose of asserting an induced infringement claim, InMode does not argue that customers and providers use the accused products differently in those two jurisdictions. Accordingly, it appears that evidence from customers and providers in Massachusetts would suffice to support an inducement claim.

Second, InMode argues that Matlock and Alinsod are relevant witnesses. InMode alleges that BTL cites an article discussing Matlock's treatments in support of its invalidity position.[54] InMode alleges that Alinsod "may have

---

[52]    *See* Amended Complaint ¶¶ 21, 22, & 29 (citing Screen Captures, Exhibits 6-11 [ECF Nos. 64-8 through 64-12]; *id.*, Ex. 13 [ECF Nos. 64-15 & 66-6 (sealed)]; *id.*, Ex. 14 [ECF Nos. 64-16 & 66-7 (sealed)].)

[53]    *Id.*

[54]    *Id.* at ¶ 30.

-13-

information relevant to infringement and validity in this case," given his involvement as a defendant in a prior action involving the asserted patent.[55]  The prior action did not involve BTL or its products.[56]  It is not clear what information Matlock and Alinsod would have concerning the validity of the asserted patent or concerning prior art references.  InMode argues that they may opine concerning "secondary considerations of non-obviousness and the motivations to combine."[57]  In their capacities as lay witnesses, it is not clear that either Matlock or Alinsod would be able to provide relevant testimony on those topics.

For the foregoing reasons, Factor 7 favors a transfer.

### 6.     Factor 8:  The Ease of Access to Sources of Proof

As discussed above, the physical accused products and key witnesses for BTL are all located in Massachusetts.  This factor favors transfer.

### 7.     Factor 10:  The Relevant Public Policy of the Forum State

This factor also favors transfer.  The Federal Circuit has noted that the district in which the accused infringer is headquartered has "a significant local interest in resolving [] patent infringement dispute[s]" because it is where the accused products are "maintained by individuals who continue to live and work in that community."  *In re FedEx Corp. Servs., Inc.*, 2022 WL 10887770, at *2 (Fed. Cir. Oct. 19, 2022).  BTL is headquartered in Massachusetts.  The time to trial is similar in both districts, and, thus, it is not a significant factor.[58]  The Court addressed the parties' positions regarding the location of evidence under other factors above.

---

[55]     *Id.*

[56]     *See* Motion 19:1-2.

[57]     Opposition 22:22-24.

[58]     *See id.* at 26:1-3.

-14-

**C.    BTL's Motion to Stay**

BTL also filed a motion to stay this case in view of a petition for *inter partes* review that is pending in the U.S. Patent Office.[59]  That motion is fully briefed,[60] and it is set for hearing on November 22, 2024.  In view of this Court's decision to transfer this case to the District of Massachusetts, it will **DENY** BTL's Motion to Stay **without prejudice**.  BTL may present its arguments to the transferee court.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    BTL's instant Motion to transfer is **GRANTED**.

2.    The Clerk is **DIRECTED** forthwith to transfer this action to the United States District Court for the District of Massachusetts.

3.    BTL's pending Motion to Stay is **DENIED without prejudice**. The hearing on that Motion set for November 22, 2024, is **VACATED**.

**IT IS SO ORDERED.**

Dated:  November 18, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[59]    *See* Def.'s Mot. to Stay Action Pending *Inter Partes* Review (the "Motion to Stay") [ECF No. 91].

[60]    *See* Pl.'s Opp'n to the Motion to Stay [ECF No. 92]; Def.'s Reply in Supp. of the Motion to Stay [ECF No. 93].